[No. 17966.    Department One.    July 6, 1923.]

## F. C. SCOTT, *Appellant*, v. J. F. DUTHIE & COMPANY et al., *Respondents*.[1]

CONTRACTS (4, 23)—MASTER AND SERVANT (1)—BONUS—MUTUALITY
—PERFORMANCE OF SERVICES. A "bonus" promised to one employed
for an indefinite term, to be paid if he works continuously for a
given period, is not lacking in mutuality or unsupported by a con-
sideration for the performance of a contractual duty; since the
employer sought and obtained "continuous service," which was not
secured by the contract of employment.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered March 14, 1923, upon sustaining a demurrer to the complaint, dismissing an action on contract. Reversed.

*John F. Dore* and *Howard Waterman,* for appellant.
*Bogle, Merritt & Bogle,* for respondents.

MACKINTOSH, J.—This appeal arises from the sustaining of a demurrer to a complaint which alleges that, on December 23, 1918, the appellant was a department foreman in the shipyard owned and operated by the respondents; that the employment was for an indefinite term; that, on that date, the respondents made a promise as follows:

"For the purpose of inducing the general depart-
ment foremen of this company to continue their work
with this company and to refrain from accepting em-

[1] Reported in 216 Pac. 853.

ployment elsewhere until this company shall complete the ships which it has contracted to build for the United States Shipping Board, Emergency Fleet Corporation, J. F. Duthie & Company promises the general department foremen now in its employment that upon the completion of its contract with the shipping board, the company will divide as a bonus one-half million dollars among those of its general department foremen who continue in its employment until the completion of that contract."

The complaint alleged further that, in reliance on this promise, the appellant remained continuously in the respondent's employment until October 15, 1920, when the contract referred to had been completed; that the appellant would not have continued in such employment except in reliance upon the promise, and that he has not been paid the bonus.

As stated by the appellant, the question here is, "where an employer promises a bonus or a share of the profits to an employee employed for an indefinite term, to be paid if he works continuously for a given period, is the employer bound by his promise when the employee accepts the offer by performance?"

The complaint states an enforceable contract, and the answer to the question is—Yes.

The offer and its acceptance by compliance with its terms created a unilateral contract which is binding upon the offerer. The principle of mutuality of obligation, as generally applied in the law of contracts, has no place in the consideration of unilateral contracts. Such contracts are not based on mutual promises or obligations.

"If the promisor has received a consideration, his promise is binding and may be aptly termed an obligation; but as there is no promise on the part of the promisee, there can be no mutual obligations. Accordingly, where one makes a promise conditioned upon

the doing of an act by another, and then latter does the act, the contract is not void for want of mutuality, and the promisor is liable though the promisee did not at the time of the promise engage to do the act; for upon the performance of the condition by the promisee, the contract becomes clothed with a valid consideration, which relates back and renders the promise obligatory." 6 R. C. L. 687.

See, also, 23 R. C. L., p. 1115.

The promise here was, therefore, no "nudum pactum" on that theory, nor is it one on the theory that the promise was one for additional pay to be given one already under contract to do the very work for which the additional pay was promised. The argument that the appellant cannot recover the bonus for the reason that he was paid his regular salary while in the respondent's employ overlooks the very idea conveyed by the word "bonus", which is "an allowance in addition to what is . . . stipulated." Standard Dictionary. The complaint shows that the appellant was free to quit his work at any time, and therefore was under no obligation to do the thing which the respondent was seeking to accomplish by its offer. The compliance with the terms of the offer created a contract supplementary to the contract of employment. By this supplementary contract the respondent agreed to reward the appellant for remaining in its employ and refraining "from accepting employment elsewhere until this company shall complete the ships." As was said in *Zwolanek v. Baker Mfg. Co.,* 150 Wis. 517, 137 N. W. 769, Ann. Cas. 1914A 793, 44 L. R. A. (N. S.) 1214:

"We regard this by-law as being simply the offer of a reward to employes for constant and continuous service. The defendant made an offer of extra or additional compensation to any employe who performed a certain number of hours' service within a given

period, provided net profits were earned, and provided the employe did not quit or was not discharged before a stated time. There is no dispute upon the point that this offer was communicated to the plaintiff when he made his original contract of employment; and the evidence tends to show that when the contract was modified in December, 1908, the plaintiff advised the defendant that the raise made in wages was satisfactory, provided he would be permitted to share in the profits and that he was informed that he could participate therein.

"A binding and enforceable contract to pay a reward rests, on one side, upon a valid offer, and, on the other side, upon an acceptance of such offer, including its terms and conditions, by a performance of the services requested in the offer before the offer lapses or is revoked. Until acceptance by performance of the services, it is merely a proposition; but when accepted by performance it becomes a binding contract, subject to the laws governing contracts generally.

"Performance constitutes acceptance of the offer, and after performance it cannot be revoked, so as to deprive a person who has acted on the faith thereof of compensation. It is not necessary that the person performing the service for which a reward is offered generally should give notice to the offerer that he accepts the offer; for in such case the party making the offer impliedly dispenses with actual notice, and the doing of the act completes the contract.

"Acting upon an offer and complying with its terms and conditions constitute an acceptance. The fact that the plaintiff had a written contract does not change the situation. That contract ran for one year, subject to renewal, but might be terminated by either party on three months' notice. The plaintiff was not obligated by this contract to remain in defendant's employ until the reward was earned, unless he saw fit to do so. The reward related to an independent subject, not covered by the contract, and one that did not affect its terms in any way."

*Roberts v. Mays Mills,* 184 N. C. 406, 114 S. E. 530, contains the following:

"It appears in this case that the contract for employment was by the week, and hence either party could terminate it at the end of any week. The offer of a bonus and its acceptance by entering upon the work was a supplementary contract for a reward in consideration of the employee remaining in the service a specified time. It did not change the terms of the contract of employment by the week, but by this agreement the employee, if he failed to remain the specified time, forfeited all claims to the bonus, and, on the other hand, if the employer discharged the employee without good and sufficient cause, he was liable to the employee for the bonus lost thereby. Inasmuch as the employee knew that the employment could be terminated at the end of any week, he is entitled, upon such violation of the supplementary contract for continuous service, upon a quantum meruit for the length of time he served at the rate of 10 per cent on the wages earned up to that date according to the employer's offer. The employee is not entitled to recover damages for the wages for the unexpired time, for the contract of employment was terminable at the end of any week, nor can he recover the bonus for the unexpired time, . . . the system of offering bonuses for continuous employment has been adopted by many employers, in their own interest, as well as being a step towards a better understanding between employers and employees. The enforcement of such contract can work no harm to employers, for they can discontinue the practice by failing at any time to renew such offers."

See, also, *Orton & Steinbrenner Co. v. Miltonberger,* 74 Ind. App. 462, 129 N. E. 47; *Bentley v. Ross,* 250 Ill. 182, 95 N. E. 182; *Kinder v. Cushman Motor Co.,* 89 Neb. 619, 131 N. W. 921; *Henderson Land & Lumber Co. v. Barber,* 17 Ala. App. 337, 85 South. 35, and *Kerbaugh v. Gray,* 212 Fed. 716, where the court said:

"The objection mainly relied upon at the trial and here was that this promise of a bonus, if made, was nudum pactum because the plaintiff, being bound to do his best for his salary, gave nothing in the way of consideration to support the promise of a bonus. This would be true if the plaintiff were legally bound to continue in the employment of the defendant to the end of the season. But he was not and could have quit work at any time. . . . Therefore the jury had a right to find that he continued in the employment after this promise of a bonus, relying upon it."

Some of these cases arose where the promise of a bonus was made at the time that the employee entered the promisor's employ, but their reasoning and applicability to the present case are not thereby lessened, for, where the employee to whom the promise is made is at liberty to cease his work at will, he is under no duty to do that which the promise seeks to secure, and, in reason, is in the same situation as is one just entering upon such employment. *Henderson Land & Lumber Co. v. Barber,* and *Zwolanek v. Baker Mfg. Co., supra.* What the respondent sought was the continuous services of the appellant, and these were not secured to it by any contract existing at the time the offer was made, any more than they would have been had the appellant not already been at work. The respondents are in error when they claim "he gave respondents nothing for which he was not otherwise fully compensated." The appellant gave what the respondents offered to pay handsomely for, i. e., uninterrupted service until the work on hand was completed. As opposed to the conclusion we have reached, there is cited the case of *Russell v. Johns-Manville Co.,* 53 Cal. App. 572, 200 Pac. 668, a short opinion by the intermediate appellate court of California. The case on its facts can be distinguished from the case at bar. However, the

court there makes use of language which is in direct conflict with our view of the law and we prefer to meet the case head-on. The decision is not carefully prepared, as is witnessed by the fact that the authorities, some of which we have noted above, are not referred to, and the result reached is alleged to be based upon two Georgia cases; *Davis & Co. v. Morgan*, 117 Ga. 504, 43 S. E. 732, 61 L. R. A. 148, 97 Am. St. 171, and *Duncan v. Cone*, 16 Ga. App. 253, 85 S. E. 203, the latter being an opinion consisting of only the two words "judgment affirmed." Nor does the former sustain the California court, as the following quotation from it demonstrates:

"Both proved a promise to give more than was due, and to pay extra for what one was already legally bound to perform. The employer, therefore, received no consideration for his promise to give the additional money at the end of the year. . . . He got no more services than he had already contracted to receive, and according to an almost unbroken line of decisions the agreement to give more than was due was a nudum pactum, and void, as having no consideration to support the promise." *Davis & Co. v. Morgan*, 117 Ga. 504.

The California case was one involving an employee under no obligation to continue in his employment, and yet the California decision says:

"We do not discover any real distinction between the facts of this case and those of the case of *Davis & Co. v. Morgan*, 117 Ga. 504."

The distinction between a promise of a gift to one for doing what he is obliged to do and the promise of a bonus to one for doing what he is not obliged to do seems to us real.

The judgment is reversed with instructions to over-rule the demurrer.

MAIN, C. J., BRIDGES, HOLCOMB, and MITCHELL, JJ., concur.