■ SAXON CAPITAL CORPORATION, Respondent, v WILVIN ASSOCIATES et al., Appellants, et al., Defendants. [600 NYS2d 708] — Order, Supreme Court, New York County (William J. Davis, J.), entered January 22, 1992, which granted plaintiff's motion for summary judgment, and judgment entered thereon on March 2, 1992, reversed, on the law, without costs, the motion is denied, and the judgment is vacated.

During the period 1989-1990 defendants Willard Scolnik and Vincent DiNapoli, doing business as Wilvin Associates, also a defendant, negotiated for the purchase of certain real property near Buffalo, New York for the sole purpose of constructing a computer facility for lease to the IRS pursuant to plans approved by the United States General Services Administration ("GSA"). Defendants approached plaintiff Saxon Capital Corporation to secure financing to purchase and develop the property, as to which Mr. Scolnik averred in his affidavit in opposition to plaintiff's motion for summary judgment: "In explaining our need for financing, we made it absolutely clear to Mr. Italiano of plaintiff that any financing would necessarily have to be approved by GSA as a precondition of awarding the lease."

Saxon drew up a 90-day exclusive brokerage agreement after being told of Wilvin's requirements, "especially the fact that any financing would have to be acceptable to GSA," and defendants signed the agreement without benefit of having it reviewed by an attorney representing Wilvin. The agreement made no mention of GSA approval despite the fact that the parties all knew, as averred by Mr. Scolnik, that without GSA approval any loan commitment would be useless to Wilvin.

In March 1990 Wilvin obtained an $18 million loan commitment from Atlantic Funding, Limited, but GSA found Atlantic Funding to be an unsatisfactory lender even after Wilvin sought reconsideration from GSA. Saxon nevertheless brought an action seeking to recover from defendants a commission of

$180,000, and moved successfully for summary judgment, persuading the IAS Court that the written contract set forth completely the parties' agreement, and therefore defendants could not offer parol evidence that GSA approval of the loan commitment was a condition of plaintiff's earning a commission thereon. We disagree.

There is no merger clause in the agreement, and the surrounding circumstances strongly suggest that the contract was not an integrated one, and therefore extrinsic evidence would be admissible to supply the terms that the parties intended to incorporate into their agreement (see, Braten v Bankers Trust Co., 60 NY2d 155; Lee v Seagram & Sons, 413 F Supp 693, 701 [SD NY], affd 552 F2d 447; Word Mgt. Corp. v AT&T Information Sys., 135 AD2d 317). We consider that the agreement was drafted by Saxon, and thus any ambiguity or genuine issue as to the completeness of the document should be construed against Saxon's interest, that the defendants signed it without legal advice, and that the condition of GSA approval was so central to the purpose of the loan that the condition might well have been perceived by defendants as self-evident and its omission unremarkable (compare, Namad v Salomon Inc., 74 NY2d 751). This is especially so wherein GSA approval of the lender was required by Federal regulations (see, 48 CFR 570.208-5). Moreover, the condition does not contradict any term of the agreement (see, Telemundo Group v Alden Press, 181 AD2d 453, 455).

We find other factual issues precluding summary judgment as well, including whether Atlantic Funding was financially able to make the loan (Rusciano Realty Servs. v Griffler, 62 NY2d 696), and whether plaintiff was the procuring cause of the commitment issued by Atlantic Funding, Limited. Concur —Carro, Wallach, Kupferman and Nardelli, JJ.

Sullivan, J. P., concurs in a separate memorandum as follows: I agree with the majority that there are issues of fact which preclude summary judgment. As the majority notes, plaintiff has not made a sufficient showing that it was the procuring cause of the commitment issued by Atlantic Funding, Limited; it has failed to establish, as a matter of law, a "direct and proximate link, as distinguished from one that is indirect and remote, between the bare introduction and the consummation." (Greene v Hellman, 51 NY2d 197, 206.)* I also

---

An agreement which gives the broker an exclusive right to negotiate a loan establishes the broker's right to a commission even upon negotiation of the loan by the owner, while an exclusive agency merely excludes the

agree that there is a question of fact as to whether Atlantic Funding was financially able to make the loan.

In my view, however, it can be concluded as a matter of law that plaintiff's right to recover a commission was not conditioned on approval of the mortgage commitment by the United States General Services Administration (GSA).

The agreement between plaintiff and Wilvin granted plaintiff "the exclusive authority for a period of 90 days" to obtain a commitment for a "mortgage covering the * * * property in the principal sum of $19,000,000 or for such other amount and/or terms to which [Wilvin] may agree." In addition, it provided that if plaintiff "obtain[s] a commitment for such mortgage," Wilvin agrees to pay plaintiff a commission, which "shall be earned on the date the commitment is accepted, and is due and payable upon closing." The Wilvin defendants claim that, while not expressed in the written agreement, "GSA approval of the mortgage lender was a prerequisite of any mortgage commitment [plaintiff] was to procure." Therefore, Wilvin argues, since GSA never approved any of the proposed lenders plaintiff was not entitled to a commission.

The majority finds an issue of fact as to whether plaintiff's right to a commission was conditioned on GSA approval of the loan commitment. While a broker's right to a commission may be dependent on a specified condition (see, 11 NY Jur 2d, Brokers, § 108), there is nothing in the record—either in the commission agreement itself or in the affidavit of Willard Scolnik, an individual defendant and principal of Wilvin—which provides a factual basis for concluding that the parties intended to include such a condition in their commission agreement. Rather, the statement by Scolnik that Wilvin made it "absolutely clear" to plaintiff that "any financing would necessarily have to be approved by GSA as a precondition of awarding the lease" provides support only for a claim that GSA would not lease the property absent its prior approval of the loan commitment.

---

employment of another broker in making the loan. (See, Solid Waste Inst. v Sanitary Disposal, 120 AD2d 915, 916.) It cannot be concluded in this case that the agreement gave plaintiff an exclusive right rather than an exclusive agency since the commission agreement did not either contain a provision to the effect that plaintiff was entitled to a commission even upon Wilvin's negotiation of a commitment or expressly exclude Wilvin from independently negotiating a commitment. (Supra.) While the agreement may be ambiguous in this regard, in the absence of extrinsic evidence demonstrating that the agreement gave plaintiff the exclusive right to negotiate a commitment rather than an exclusive agency, we are presented only with a question of law. (Supra, at 917.)

Nor is there any merit to Wilvin's argument that since plaintiff did not procure a lender ready, willing and able to perform on the terms set by Wilvin *(see, Rusciano Realty Servs. v Griffler,* 62 NY2d 696), it is not entitled to a commission. Wilvin, since it accepted the commitment from Atlantic Funding, is past the point of denying that the terms of that commitment were unsatisfactory. As was said in another matter in words that could just as easily have been written with this case in mind, "The fact that [Wilvin] ultimately derived no benefit from the commitment obtained by [plaintiff] does not relieve [Wilvin] of the obligation to pay for the contractual service rendered. * * * '[Where the broker] has rendered the stipulated service and it is through no fault of [its] that the matter is never completed,' " it is nevertheless entitled to its commission. *(Morse Co. v 3 Hanover Sq. Owners Corp.,* 156 AD2d 229, 230, quoting *Smith v Peyrot,* 201 NY 210, 214.)

Equally without merit is Wilvin's claim that parol evidence is admissible to establish GSA approval as a prerequisite of the mortgage commitment. First of all, whether GSA would lease the property absent its prior approval of the loan commitment is not at issue. The relevant inquiry, rather, is whether plaintiff's right to a commission was conditioned on approval of the mortgage commitment by GSA. In any event, extrinsic evidence is inadmissible since the contract, although not reviewed by Wilvin's attorney, is between sophisticated businessmen and is clear and unambiguous. *(See, Namad v Salomon Inc.,* 74 NY2d 751, 753; *see also, Morse Co. v 3 Hanover Sq. Owners Corp.,* 156 AD2d, *supra,* at 230.) A document which is complete, clear and unambiguous on its face is an integrated agreement as a matter of law and defines the limits of the contract even in the absence of a merger clause. *(See, Braten v Bankers Trust Co.,* 60 NY2d 155, 161-163.)